**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TERRY KATZ | ) | |
| | ) | |
| *Plaintiff,* | ) | **Case No. _____** |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEL PHARMA, LLC, a Texas limited | ) | |
| liability company; NTEL PHARMA, LLC, | ) | |
| a Texas limited liability company; | ) | |
| NTEL NUTRA, INC., a Texas corporation; | ) | |
| and LANDON SUGGS, an individual. | ) | |
| | ) | |
| *Defendants.* | ) | |
| ─────────────────────────── | ) | |

## PLAINTIFF TERRY KATZ'S ORIGINAL COMPLAINT

COMES NOW Plaintiff TERRY KATZ (hereinafter "Mr. Katz"), by and through his undersigned attorneys, and brings this action for tortious deprivation of a corporate interest, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, violations of the Texas Uniform Fraudulent Transfer Act, and civil conspiracy against Defendants INTEL PHARMA, LLC, NTEL PHARMA, LLC, NTEL NUTRA, INC., and LANDON SUGGS (collectively referred to herein as, "Defendants") and alleges as follows:

## INTRODUCTION

This is a lawsuit by an investor who has been unlawfully deprived of his ownership interest in an early stage startup and whose ownership interest was further deprived through multiple fraudulent transfers. NTel Nutra, Inc. ("NUTRA") markets, produces, and sells various workout supplement products both domestically and abroad. NUTRA's core products include "Arez God of the Gym," a pre workout supplement, and "Alphazine," a post workout supplement. NUTRA is the successor-in-interest to Intel Pharma, LLC ("INTEL") and NTel

Pharma, LLC ("N-TEL"), both of which are no longer operational but previously sold and marketed "Arez God of the Gym" and "Alphazine" in addition to other products NUTRA now sells. As INTEL and N-TEL's successor-in-interest, NUTRA has the same owners and officers as INTEL and N-TEL and exploits what were once INTEL and N-TEL's assets.

In early 2015, Landon Suggs ("Mr. Suggs"), then the sole owner of INTEL, offered Terry Katz ("Mr. Katz") a 25% ownership interest in INTEL in exchange for startup capital and other in-kind contributions. Mr. Katz accepted the offer and provided the needed capital and in-kind contributions. After INTEL became operational, Mr. Suggs conspired to deprive Mr. Katz of his ownership interest in INTEL. As part of this scheme, Mr. Suggs directed INTEL to transfer all, or substantially all, of INTEL's assets to a newly formed entity, N-TEL, an entity he and Angel Echevarria ("Mr. Echevarria") owned and controlled. Mr. Suggs and Mr. Echevarria then repeated this exercise transferring all, or substantially all, of N-TEL's assets to yet another entity, NUTRA, which they also owned and controlled and continue to own and control. Neither transaction was conducted at arm's length, and neither transaction was supported by adequate consideration, if any.

## **JURISDICTION AND VENUE**

### 1.

Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this dispute because the plaintiff and the defendants are citizens of different states and the amount in controversy in this dispute, exclusive of interest and costs, exceeds seventy-five thousand dollars and no cents ($75,000.00).

2.

This Court has personal jurisdiction over Defendants because they are either residents of the State of Texas residing in the Southern District of Texas or they are Texas limited liability companies or corporations with their principal places of business located in the Southern District of Texas.

3.

Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper in the Southern District of Texas because all Defendants reside or are located within the geographical boundaries of this District, and a substantial part of the events or omissions giving rise to Mr. Katz's claims occurred in this District.

**THE PARTIES**

4.

Plaintiff Terry Katz ("Mr. Katz") is a resident of the State of Georgia residing at 910 Deerfield Crossing Drive, Apartment 3114, Alpharetta, Georgia 30004. He is a serial entrepreneur having created multiple successful nutritional supplement brands and products in both the United States and abroad.

5.

Mr. Suggs is a resident of the State of Texas and may be served at his residence located at 12808 Queensbury Lane, Apartment E317, Houston, Texas 77024.

6.

INTEL is a Texas limited liability company. Its principal office address was located at 3220 Troup Highway, Suite 160, Tyler, Texas 75701. The Texas Secretary of State forfeited its certificate of formation on January 27, 2017. It may be served with process through its CEO, Mr.

Suggs. He may be served at his residence located at 12808 Queensbury Lane, Apartment E317, Houston, Texas 77024.

7.

N-TEL is a Texas limited liability company. Its principal office address is located at 5604 S. Donnybrook Avenue, Tyler, Texas 75703. It may be served through its registered agent, Mr. Suggs, located at 12808 Queensbury Lane, Apartment E317, Houston, Texas 77024.

8.

NUTRA is a Texas corporation with its principal office address located at 5829 West Sam Houston Parkway North, Suite 405, Houston, Texas 77041. It may be served through its registered agent, Mr. Suggs, located at 12808 Queensbury Lane, Apartment E317, Houston, Texas 77024.

**FACTUAL BACKGROUND**

THE AGREEMENT TO INVEST

9.

In or around January 2015, Mr. Echevarria, who had an existing business relationship with Mr. Katz, introduced Mr. Katz to Mr. Suggs.

10.

In or around February 2015, Mr. Suggs provided Mr. Katz with an INTEL business proposal describing a workout supplement business and brand he was developing. At the time, Mr. Suggs was INTEL's 100% owner. Among other things, the proposal detailed INTEL's objectives, hurdles, and needs.

11.

As indicated in the INTEL business proposal, and as expressed by Mr. Suggs himself, the needs included, among other things, purchasing initial product inventory, locating warehouse space, and soliciting new accounts to generate sales.

12.

In or around late February or early March 2015, at an in-person meeting in Fort Lauderdale, Florida, Mr. Suggs offered Mr. Katz a 25% ownership interest in INTEL in exchange for Mr. Katz funding the purchase of initial product inventory, funding the purchase of product labels, providing warehouse space for INTEL's product inventory, and using his contacts in the supplement industry to solicit sales for INTEL's new products.

13.

Mr. Katz accepted the offer and, in fact, funded the purchase of product inventory and the purchase of product labels. Mr. Katz also provided warehouse space for INTEL's product inventory, which was also used for shipping and distributing INTEL's products. Mr. Katz also used his contacts in the supplement industry to solicit sales for INTEL's products.

14.

Subsequent to Mr. Katz's acceptance of the offer, and after his substantial, if not complete, performance in reliance on the offer, Mr. Suggs confirmed Mr. Katz's 25% ownership interest in written correspondence with Mr. Katz.

15.

Also subsequent to Mr. Katz's acceptance of the offer, and after his substantial, if not complete, performance in reliance on the offer, Mr. Echevarria represented in written

4852-4962-6467.1

correspondence to a third-party that the owners of INTEL were Mr. Suggs, Mr. Echevarria, **and** Mr. Katz.

16.

On information and belief, at the time of Mr. Echevarria's representation, he was an owner in and the president of INTEL.

17.

Subsequent to the foregoing, Mr. Katz received at least two income distributions from INTEL in the summer of 2015. He has received no further income distributions from INTEL, N-TEL, or NUTRA.

18.

On or around August 8, 2015, Mr. Katz wrote Mr. Suggs and Mr. Echevarria and presented an offer for one or both of them to purchase his INTEL ownership interest. Mr. Suggs never responded to this written offer in any manner whatsoever.

19.

On or around September 10, 2015, Mr. Katz threatened Mr. Suggs, Mr. Echevarria, and INTEL with legal action if they did not, among other things, give proper recognition to his ownership interest in INTEL and pay any income distributions that were then due and owing.

INTEL PHARMA, LLC TRANSFERS ASSETS TO NTEL PHARMA, LLC

20.

Among other products, INTEL sold and marketed "Arez God of the Gym," in various flavor combinations, and the product "Alphazine."

6

21.

On or around January 27, 2017, the Texas Secretary of State forfeited INTEL's certificate of formation.

22.

Prior to this forfeiture, on or around August 22, 2016, Mr. Suggs and Mr. Echevarria incorporated N-TEL, a Texas limited liability company.

23.

On information and belief, after N-TEL was incorporated, INTEL assigned all or substantially all of its assets to N-TEL.

24.

On information and belief, the assignment or transfer of INTEL's assets (e.g., intellectual property, cash, and website) to N-TEL was not an arm's length transaction and lacked adequate consideration.

25.

On information and belief, the foregoing assignment from INTEL to N-TEL rendered INTEL insolvent.

26.

On information and belief, at the time of the foregoing conveyance from INTEL to N-TEL, Mr. Suggs and Mr. Echevarria controlled INTEL and N-TEL as the sole, or majority, owners of both entities.

27.

At the time of the foregoing conveyance from INTEL to N-TEL, Mr. Suggs was the managing member and CEO of INTEL, and the managing member and CEO of N-TEL.

28.

At the time of the foregoing conveyance from INTEL to N-TEL, Mr. Echevarria was a member and the president of INTEL, and a member and the president of N-TEL.

29.

At the time of the foregoing conveyance from INTEL to N-TEL, Mr. Suggs and Mr. Echevarria were, together, majority owners of INTEL and the sole owners of N-TEL and, if not the sole owners of N-TEL, they were, together, the majority owners of N-TEL.

30.

Immediately following the foregoing conveyance, N-TEL started selling and marketing the same workout supplement products as INTEL including, but not limited to, "Arez God of the Gym," in various flavor combinations, and the product "Alphazine."

31.

Following the foregoing conveyance, INTEL ceased selling and marketing any workout supplement products whatsoever.

32.

For a time, N-TEL sold and marketed these products through INTEL's own website: "www.intel-pharma.com." Thereafter, INTEL's website redirected visitors to N-Tel's websites: "www.ntelpharma.com" and/or "www.ntelnation.com."

33.

N-TEL also used INTEL's Facebook page to market to, and communicate with, consumers and the public.

34.

N-TEL is the successor of INTEL having acquired its assets, assumed its liabilities, and continued and carried on the going business of INTEL.

## NTel Pharma, LLC Transfers Assets to NTel Nutra, LLC

35.

A little less than 18 months after the incorporation of N-TEL, Mr. Suggs and Mr. Echevarria incorporated NUTRA, a Texas corporation, on or around January 1, 2018.

36.

On information and belief, after NUTRA was incorporated, N-TEL assigned all or substantially all of its assets to NUTRA.

37.

On information and belief, the assignment or transfer of N-TEL's assets (e.g., intellectual property, cash, and website) to NUTRA was not an arm's length transaction and lacked adequate consideration.

38.

On information and belief, the foregoing conveyance rendered N-TEL insolvent and, though it remains identified as active by the Texas Secretary of State, it is no longer conducting business.

39.

On information and belief, at the time of the foregoing conveyance from N-TEL to NUTRA, Mr. Suggs and Mr. Echevarria controlled N-TEL and NUTRA as the sole owners of both entities.

40.

At the time of the foregoing conveyance from N-TEL to NUTRA, Mr. Suggs was the managing member and CEO of N-TEL, and a shareholder in and the CEO of NUTRA.

4852-4962-6467.1

41.

At the time of the foregoing conveyance from N-TEL to NUTRA, Mr. Echevarria was a member and the president of N-TEL, and a shareholder in and the president of NUTRA.

42.

On information and belief, at the time of the foregoing conveyance from N-TEL to NUTRA, Mr. Suggs and Mr. Echevarria were the sole owners of N-TEL and NUTRA, and, if not, together they owned over 50% of each entity.

43.

On January 1, 2018, the same day NUTRA was incorporated, NUTRA made the following public announcement via Twitter:

> NTEL Pharma is now NTEL Nutra! We wanted our name to symbolize what we do in a better light. The old name had a habit of confusing potential customers, so we feel it is worth the trouble to make the change.

44.

NUTRA continues to hold itself out as the continuation of N-TEL describing itself to the public and its consumers as "[f]ormerly NTel Pharma."

45.

Immediately following the foregoing conveyance from N-TEL, NUTRA started selling and marketing the same products as N-TEL including, but not limited to, "Arez God of the Gym," in various flavor combinations, and the product "Alphazine".

46.

Following the foregoing conveyance to NUTRA, N-TEL ceased selling and marketing any workout supplement products whatsoever.

10

47.

N-TEL's websites "www.ntelpharma.com" and "www.ntelnation.com" now redirect visitors to NUTRA's website, "www.ntelnutra.com."

48.

Furthermore, NUTRA now uses N-TEL's (formely INTEL's) Facebook page to market to, and communicate with, consumers and the public.

49.

Similarly, using social media channels NUTRA regularly markets itself and its products using the hashtags "#intelpharma" and "#ntelnation"—all referring to its predecessors-in-interest, INTEL and N-TEL.

50.

NUTRA represents itself to the public using the same "Who We Are" mission statement that N-TEL and INTEL previously used:

> We believe in truth. We believe in quality. We believe that in the end, no marketing regime will ever replace the power of a satisfied consumer who BECOMES more than a customer...
>
> We believe in creating a team who shares the same goals and desires for those around us.
>
> At [*Intel Pharma, NTel Pharma,* or *NTel Nutra*][1], you will never hear about the miracles our products work without effort. You will never see claims or statements that breed a false hope inside of consumers, that ultimately will let you down and discourage you. What you WILL hear about, is the TRUTH in what it takes to achieve your goals. As a U.S. Veteran owned and operated company, comradery is a core value that runs deep through the veins of our infrastructure. We believe that the best people to have in your life are those that will say mean things to your face, and great things behind your back.
>
> We will not sell you the miracle pill.

---

[1] Each entity inserts its name in the bracketed space.

4852-4962-6467.1

We WILL sell you tools. The most advanced, and powerful tools that we have at our disposal.

We WILL stand behind our products, and strive to be innovators instead of followers.

We WILL embody the values that we believe gave us the opportunity to live our dream, and share it with you. Through our products, our story, and our customer service, we hope to recruit you as more than a customer.

We wish to have you join our family.

51.

NUTRA is the successor of INTEL and N-TEL having acquired the assets of each, assumed the liabilities of each, and continued and carried on the going business of INTEL and N-TEL.

## COUNT I
## TORTIOUS DEPRIVATION OF AN INTEREST IN A CORPORATION
### (As to Mr. Suggs, INTEL, N-TEL and NUTRA)

52.

Mr. Katz reiterates and re-alleges each of the allegations set forth in Paragraphs 1—51 as if fully set forth herein verbatim.

53.

Mr. Katz possessed legal title to, and had an intangible ownership right in, INTEL in the form of 25% of INTEL's membership units.

54.

By virtue of Mr. Katz's legal title to 25% of INTEL's membership units, Mr. Katz had a corresponding beneficial interest in 25% of INTEL's assets.

4852-4962-6467.1

55.

INTEL and Mr. Suggs' refusal to recognize Mr. Katz's 25% ownership share prevented Mr. Katz's exercise of these intangible rights.

56.

INTEL and Mr. Suggs' refusal to make distributions of income to Mr. Katz deprived Mr. Katz of his pro rata ownership interest in INTEL.

57.

Mr. Suggs and INTEL's transfer of INTEL's assets (e.g., goodwill, intellectual property, cash) to N-TEL for no consideration, or nominal consideration, further deprived Mr. Katz of the pro rata beneficial interest he possessed in INTEL's assets.

58.

As a direct and proximate result of this tortious deprivation, Mr. Katz has been financially harmed in an amount to be proven at trial but in an amount no less than $1,000,000.00.

59.

INTEL and Mr. Suggs acted intentionally and exhibited such willful misconduct as to raise the presumption that each acted with malice.

60.

Accordingly, and pursuant to TEX. CIV. PRAC. AND REM. CODE § 41.001, Mr. Katz is entitled to recover exemplary damages from INTEL and Mr. Suggs, jointly and severally, in an amount to be determined by the trier of fact.

61.

N-TEL, as the successor-in-interest to INTEL, is also liable for the compensatory and exemplary damages resulting from this tortious conduct jointly and severally with Mr. Suggs and INTEL.

62.

NUTRA, as the successor-in-interest to INTEL and N-TEL, is also liable for the compensatory and exemplary damages resulting from this tortious conduct jointly and severally with Mr. Suggs and INTEL.

63.

INTEL, N-TEL, and NUTRA are companies which were, and are, owned and operated by Mr. Suggs and Mr. Echevarria with such continuity of purpose, facilities, commingling of funds and disregard of the separate identity of each that such operation amounts, and amounted, to one entity thereby imposing liability for the above described compensatory and punitive damages to all, jointly and severally.

## COUNT II
## <u>BREACH OF FIDUCIARY DUTY</u>
### (As to Mr. Suggs)

64.

Mr. Katz reiterates and re-alleges each of the allegations set forth in Paragraphs 1—63 as if fully set forth herein verbatim.

65.

Mr. Suggs, as chief executive officer and managing member of INTEL, owed fiduciary duties to all members, including Mr. Katz.

66.

In the foregoing role Mr. Suggs owed a duty of good faith and loyalty to minority members, including Mr. Katz, which prohibited him from appropriating the assets and property of INTEL to the exclusion of Mr. Katz.

67.

Mr. Suggs breached these fiduciary duties when, while an officer and managing member of INTEL, he preferred himself over Mr. Katz when directing the company to make distributions of income to its members.

68.

Mr. Suggs also breached this fiduciary duty when, in or around August 22, 2016, and without regard to Mr. Katz's 25% ownership interest in INTEL, he directed INTEL to transfer or assign all, or substantially all, of its assets to N-TEL, an entity he owned and controlled, for no consideration, or nominal consideration, and, effectively, discontinued INTEL's business operations.

69.

As a direct and proximate result of these breaches of fiduciary duty, Mr. Katz has been financially harmed in an amount to be proved at trial—such amount being not less than $1,000,000.00.

70.

Mr. Suggs acted intentionally and exhibited such willful misconduct as to raise the presumption that he acted with malice.

71.

Accordingly, and pursuant to TEX. CIV. PRAC. AND REM. CODE § 41.001, Mr. Katz is entitled to recover exemplary damages from Mr. Suggs in an amount to be determined by the trier of fact.

**COUNT III**
**<u>AIDING & ABETTING A BREACH OF FIDUCIARY DUTY</u>**
**(As to N-TEL & NUTRA)**

72.

Mr. Katz reiterates and re-alleges each of the allegations set forth in Paragraphs 1—71 as if fully set forth herein verbatim.

73.

Mr. Suggs owed a duty of good faith and loyalty to INTEL's minority members, including Mr. Katz, which prohibited him from appropriating the assets and property of INTEL to the exclusion of Mr. Katz.

74.

N-TEL and its officers were aware of the foregoing fiduciary duties that Mr. Suggs owed to Mr. Katz.

75.

N-TEL colluded in or aided and abetted Mr. Suggs' breaches of these fiduciary duties, and was an active and knowing participant in these breaches.

76.

N-TEL participated in the breach of these fiduciary duties by Mr. Suggs for the purpose of advancing its own interest.

16

77.

N-TEL obtained both direct and indirect benefits from colluding or aiding and abetting Mr. Suggs' breaches.

78.

As a direct and proximate result of aiding and abetting the foregoing breaches of fiduciary duties, Mr. Katz has been financially harmed in an amount to be proven at trial—such amount being not less than $1,000,000.00.

79.

N-TEL acted intentionally and exhibited such willful misconduct as to raise the presumption that it acted with malice.

80.

Accordingly, and pursuant to TEX. CIV. PRAC. AND REM. CODE § 41.001, Mr. Katz is entitled to recover exemplary damages from N-TEL in an amount to be determined by the trier of fact.

81.

NUTRA, as the successor-in-interest to N-TEL, is also liable for the compensatory and exemplary damages resulting from this tortious conduct jointly and severally with N-TEL.

82.

INTEL, N-TEL, and NUTRA are companies which were, and are, owned and operated by Mr. Suggs and Mr. Echevarria with such continuity of purpose, facilities, commingling of funds and disregard of the separate identity of each that such operation amounts, and amounted, to one entity thereby imposing liability for the above described compensatory and punitive damages to all, jointly and severally.

**COUNT IV**
**VIOLATIONS OF THE TEXAS UNIFORM**
**FRAUDULENT TRANSFER ACT**
**(As to INTEL, N-TEL, and NUTRA)**

83.

Mr. Katz reiterates and re-alleges each of the allegations set forth in Paragraphs 1—82 as if fully set forth herein verbatim.

84.

The Texas Uniform Fraudulent Transfer Act (TEX. BUS. & COMM. CODE § 24.001, *et seq.*), prohibits transactions designed defraud, hinder, or delay a creditor from collecting on a debt.

85.

INTEL violated TUFTA when it transferred, or assigned, all or substantially all of its assets to N-TEL for no consideration or inadequate consideration.

86.

N-TEL violated TUFTA when it transferred, or assigned, all or substantially all of its assets to NUTRA for no consideration or inadequate consideration.

87.

The foregoing causes of action give rise to claims against INTEL and N-TEL within the meaning of TUFTA.

88.

As a result, at the time of the transfers herein described, Mr. Katz was a creditor of INTEL and N-TEL within the meaning of TUFTA.

89.

As a result, at the time of the transfers herein described, INTEL and N-TEL were debtors of Mr. Katz within the meaning of TUFTA.

90.

By virtue of the commonality of ownership and control alleged above, INTEL, N-TEL, and NUTRA are affiliates of one another within the meaning of TUFTA, or, alternatively, were affiliates with one another at the time of the transfers or assignments of assets from INTEL to N-TEL and N-TEL to NUTRA.

91.

The transfers of assets from INTEL to N-TEL, and N-TEL to NUTRA, described above, were made with actual intent to hinder, delay, or defraud Mr. Katz.

92.

The value of the consideration received by INTEL from N-TEL was not reasonably equivalent to the value of the assets transferred. And the value of the consideration received by N-TEL from NUTRA was not reasonably equivalent to the value of the assets transferred.

93.

INTEL transferred or assigned all or substantially all of its assets to N-TEL, an insider of INTEL within the meaning of TUFTA. And N-TEL transferred or assigned all or substantially all of its assets to NUTRA, an insider of N-TEL within the meaning of TUFTA.

94.

Before the foregoing transfers, INTEL and its owners, who also own N-TEL and NUTRA, were threatened with suit.

95.

On information and belief, INTEL became insolvent as a consequence of the foregoing transfers to N-TEL. And on information and belief, N-TEL became insolvent as a consequence of the foregoing transfers to NUTRA.

96.

In light of the foregoing, Mr. Katz seeks the following remedies as provided by TEX. BUS. & COMM. CODE § 24.008:

a.  Avoidance of the transfers described above to the extent necessary to satisfy Mr. Katz's judgment;

b.  Attachment of the assets that are the subject of the transfers described above;

c.  Execution of the assets transferred or the proceeds therefrom;

d.  Attorneys' fees and costs as provided by TEX. BUS. & COMM. CODE § 24.013; and

e.  Any other relief the circumstances may require.

**COUNT V**
**CIVIL CONSPIRACY**
**(As to Mr. Suggs, INTEL, N-TEL, and NUTRA)**

97.

Mr. Katz reiterates and re-alleges each of the allegations set forth in Paragraphs 1—96 as if fully set forth herein verbatim.

98.

As shown herein, Mr. Suggs, INTEL and N-TEL conspired and agreed amongst themselves, their employees and agents, and with others unknown to Mr. Katz, to transfer or assign all of INTEL's assets to N-TEL for no consideration, or nominal consideration, and without regard to Mr. Katz's 25% ownership interest in INTEL or his corresponding beneficial ownership interest in INTEL's assets.

20

99.

As shown herein, Mr. Suggs, INTEL, and N-TEL conspired and agreed amongst themselves, their employees and agents, and with others unknown to Mr. Katz, to transfer or assign all of INTEL's assets to N-TEL for no consideration or nominal consideration, to defraud Mr. Katz—a creditor.

100.

As shown herein, Mr. Suggs, N-TEL, and NUTRA conspired and agreed amongst themselves, their employees and agents, and with others unknown to Mr. Katz, to transfer or assign all of N-TEL's assets to NUTRA for no consideration, or nominal consideration, in an effort to defraud Mr. Katz—a creditor.

101.

The objects of these conspiracies, as described above, were themselves legal wrongs and amounted to a tortious deprivation of Mr. Katz's ownership interest in INTEL, breaches of fiduciary duties owed by Mr. Suggs to Mr. Katz, aiding and abetting breaches of fiduciary duty by N-TEL, and fraudulent transfers by INTEL, N-TEL, and NUTRA, all at the direction of Mr. Suggs.

102.

The objects of these conspiracies were, in fact, accomplished by Mr. Suggs, INTEL, N-TEL, and NUTRA to the injury of Mr. Katz.

103.

Such conduct constitutes agreements by, and among, Mr. Suggs, INTEL, N-TEL, NUTRA, and others unknown to Mr. Katz, to commit unlawful acts, or to commit lawful acts in an unlawful manner as proscribed by law.

4852-4962-6467.1

104.

Mr. Suggs, Mr. Echevarria, INTEL, N-TEL, and NUTRA are jointly and severally liable to Mr. Katz for their actions in conspiring as described above.

105.

As a proximate result of this conspiracy, Mr. Katz has been financially harmed in an amount to be proven at trial—such amount being not less than $1,000,000.00.

106.

In conspiring, as described above, Mr. Suggs, INTEL, N-TEL, and NUTRA acted intentionally and exhibited such willful misconduct as to raise the presumption that each acted with malice.

107.

Accordingly, and pursuant to TEX. CIV. PRAC. AND REM. CODE § 41.001, Mr. Katz is entitled to recover exemplary damages from Mr. Suggs, INTEL, N-TEL, and NUTRA jointly and severally, in an amount to be determined by the trier of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Terry Katz respectfully requests that this Court enter judgment as follows:

(1)     For judgment in favor of Plaintiff and against Defendants in such amount as to be shown by the evidence at trial;

(2)     Specifically, as to Count IV:

a.   Avoidance of the transfers described therein to the extent necessary to satisfy Mr. Katz's judgment;

b.   Attachment of the assets that are the subject of the transfers described therein;

  c. Execution of the assets transferred or the proceeds therefrom;

  d. Attorneys' fees and costs; and

  e. Any other relief the circumstances may require.

(3) For all willful acts with malice, punitive damages as the Court may allow;

(4) For an award of attorneys' fees and costs as determined by the Court; and

(5) For all such other relief as this Court deems fair and equitable under these circumstances.

    Respectfully submitted,

    **LEWIS BRISBOIS BISGAARD & SMITH LLP**

    */s/ Kent Altsuler*
    KENT ALTSULER
    Texas Bar No.: 24001646
    SD ID No.: 23424
    24 Greenway Plaza, Suite 1400
    Houston, Texas 77046
    (713) 659-6767 Telephone
    (713) 759-6830 Facsimile
    Kent.Altsuler@lewisbrisbois.com
    *Attorney-In-Charge*

OF COUNSEL:

**KAUFMAN & FORMAN, P.C.**

Matthew D. Treco
Georgia Bar No. 802181
8215 Roswell Road, Building 800
Atlanta, Georgia 30350-6445
T: (770) 390-9200
F: (770) 395-6720
mdt@kauflaw.net

4852-4962-6467.1