IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERRY KATZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1347 |
| | § | |
| INTEL PHARMA, LLC, a Texas limited | § | |
| liability company; NTEL PHARMA, LLC, | § | |
| a Texas limited liability company; | § | |
| NTEL NUTRA, INC., a Texas corporation; | § | |
| and LANDON SUGGS, an individual. | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Terry Katz brought this derivative action on behalf of the nominal defendant, Intel Pharma, LLC, against Ntel Pharma, LLC, Ntel Nutra, Inc., and Landon Suggs. (Docket Entry Nos. 1, 18). Katz asserts breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, violations of the Texas Uniform Fraudulent Transfer Act, and civil conspiracy. (*Id.*). The defendants moved to dismiss, and Katz responded and filed an amended complaint. (Docket Entry Nos. 11, 18, 20). This court denied the motion to dismiss as moot, the defendants moved to dismiss the amended complaint, and Katz responded. (Docket Entry Nos. 24–26). For the reasons explained below, the court denies the defendants' motion to dismiss.

**I.    Background**

    **A.    The Complaint's Allegations**

Katz alleges that his relationship with Landon Suggs, then the sole owner of workout-supplement company Intel Pharma, LLC, began in January 2015. (Docket Entry No. 18

1

at 1–2). In February 2015, Suggs gave him a business proposal for a new supplement brand. (*Id.*). A month later, Suggs offered Katz a 25% interest in Intel in exchange for funding the initial inventory purchase, providing warehouse space, purchasing labels, and soliciting sales. (*Id.* at ¶ 14). Katz alleges that he orally accepted the proposal, creating an enforceable contract, and that he met the terms. (*Id.* at 15). The amended complaint alleges that Suggs confirmed Katz's 25% interest in writing. (*Id.* at ¶ 16). Angel Echevarria, Intel's president, referred to Katz as a co-owner of the company in correspondence with an insurance broker. (*Id.* at ¶ 17–18). Katz received at least two income distributions from Intel in the summer of 2015. (*Id.* at ¶ 19).

Katz alleges that in August 2015, he wrote to Suggs and Echevarria offering them the opportunity to buy out his ownership interest in Intel. (*Id.* at ¶ 20). Neither responded. (*Id.*). In September 2015, Katz threatened Suggs and Echevarria with legal action if they did not pay him the income distributions he was owed. (*Id.* at ¶ 21).

The amended complaint alleges that Suggs and Echevarria formed Ntel Pharma a year later and transferred all or substantially all of Intel's assets to Ntel Pharma. (*Id.* at ¶¶ 24–25). Ntel Pharma allegedly began selling and marketing the same workout supplements as Intel, including, for a time, through Intel's website and Facebook page. (*Id.* at ¶¶ 31–32). Later, the Intel website redirected customers to Ntel Pharma's websites. (*Id.*). Intel stopped selling its products or doing business, and, in January 2017, the Texas Secretary of State forfeited Intel's certificate of formation. (*Id.* at ¶ 34).

Katz alleges that Suggs and Echevarria formed a third company, NTel Nutra, in January 2018, and that they transferred substantially all of Ntel Pharma's assets to NTel Nutra. Katz alleges that NTel Nutra described itself as a continuation of Ntel Pharma and sold the same supplements as

Ntel Pharma and Intel had sold. (*Id.* at ¶¶ 46–50). Katz also alleges that NTel Nutra adopted the same hashtags and marketing features that Intel and Ntel Pharma had used. (*Id.* at ¶¶ 51–55). Katz contends that Suggs and Echevarria were the majority owners, if not the sole owners, of NTel Nutra. (*Id.* at ¶ 43).

Katz asserts on Intel's behalf claims for: (1) breach of fiduciary duty against Suggs; (2) aiding and abetting a breach of fiduciary duty, against Ntel Pharma and NTel Nutra; (3) violations of the Texas Uniform Fraudulent Transfer Act, against N-Tel and Nutra; and (4) civil conspiracy, against Suggs, Ntel Pharma, and NTel Nutra.

### B. The Motion to Dismiss

The defendants argue that Katz bases his claims on his alleged oral agreement with Suggs to acquire a 25% interest in Intel, and, therefore, that his claims sound in contract. (Docket Entry No. 25 at 8–10). They argue that Katz has not pleaded sufficient facts to support an inference that Katz and Suggs had an enforceable contract. They urge the dismissal of Katz's civil conspiracy claim because Texas law does not recognize a claim for civil conspiracy to breach a contract. (*Id.* at 10–12). They similarly argue that Katz's aiding and abetting claims are not cognizable under Texas law. (*Id.* at 11). Finally, they argue that Katz's amended complaint is deficient because many of its claims are based solely on "information and belief." (*Id.* at 10).

## II. The Legal Standards under Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible

3

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). But "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 558 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 233-34 (3d ed. 2004)) (alteration in original).

A plaintiff alleging fraud is held to the heightened pleading standard of Federal Rule of Civil

4

Procedure 9(b). The Rule provides that a party alleging fraud "must state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). The plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009) (citation and internal quotation marks omitted).

### III. Analysis

#### A. The Nature of Katz's Claims

The defendants' central argument for dismissal is that the claims Katz presents as tort claims are contract claims because each is based on Katz's alleged oral agreement with Suggs. (Docket Entry No. 25 at 5). The defendants' argument for why this requires dismissal is that Katz is seeking contract performance, but has not pleaded sufficient facts to show that the contract exists, much less that it was breached.

Katz responds that the allegations about his agreement with Suggs are only to show that he has standing to bring this derivative claim. See TEX. BUS. ORG. CODE § 101.452; *see also In re LoneStar Logo & Signs, LLC*, 552 S.W.3d 342, 347 (Tex. App.—Austin 2018, no pet.) ("From these rationales has followed the rule, recognized in Texas as elsewhere, that a corporate shareholder (and, by logical extension, an LLC member) must have and maintain that ownership status in order to

have standing to prosecute derivative claims on the entity's behalf."). Katz argues that the defendants have mischaracterized his complaint by arguing that he bases his claims on Suggs's failure to give him distributions from his 25% interest in Intel. Katz clarifies that he does not seek relief for Suggs's failure to comply with an oral agreement to give Katz a 25% interest and to make distributions based on that interest. Instead, Katz argues he is pleading facts about the contract to show that, because he has a 25% ownership interest, he has standing to bring his derivative suit.

Katz's claims are properly considered under § 101.463 of the Texas Business Organizations Code, which provides special rules for closely held limited liability companies. *See* TEX. BUS. ORG. CODE § 101.463. Under § 101.463, a "closely held limited liability company" is a limited liability company with "(1) fewer than 35 members; and (2) no membership interests listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national securities association." § 101.463(a). Katz alleges that Suggs was the sole owner of Intel before he offered Katz a 25% interest, meaning that Intel had fewer than 35 members and that its membership interests are not listed on a national exchange.

"Sections 101.452–101.459 do not apply to a closely held limited liability company." § 101.463(b); *see also Lonestar Logo*, 552 S.W.3d at 348–49. "The import and effect of this exemption, as the Texas Supreme Court has observed in regard to the parallel provisions that govern shareholder-derivative suits, are that 'the Legislature has enacted special rules to allow its shareholders to more easily bring a derivative suit on behalf of the corporation,' including 'without having to prove that they "fairly and adequately represent[] the interests of" the corporation, without having to make a "demand" upon the corporation, as in other derivative actions, and without fear of a stay or dismissal based on actions of other corporate actors in response to a demand.'" *Id.* at

349 (quoting *Ritchie v. Rupe*, 443 S.W.3d 856, 880–81 (Tex. 2014) (citations omitted)). Section 101.463 also provides:

> [i]f justice requires:
>
> (1) a derivative proceeding brought by a member of a closely held limited liability company may be treated by a court as a direct action brought by the member for the member's own benefit; and
>
> (2) a recovery in a direct or derivative proceeding by a member may be paid directly to the plaintiff or to the limited liability company if necessary to protect the interests of creditors or other members of the limited liability company.

§ 101.463(c).

Even if Intel is a closely held corporation, Katz must establish himself as a member of the LLC to bring a derivative suit. The complaint alleges that Katz had a 25% ownership interest in Intel and that both Suggs and Echevarria corroborated Katz's interest in writing. (Docket Entry No. 18 at 16–17). A membership interest is a bundle of economic rights in the LLC, including the right to receive distributions. See TEX. BUS. ORG. CODE § 1.002(54). The complaint alleges that Katz received the right to income distributions from Intel based on his ownership interest and that he received at least two distributions. (Docket Entry No. 18 at ¶ 19). Viewing the complaint in the light most favorable to Katz, the factual allegations are sufficient to permit Katz's derivative claims. The fact that Katz repeatedly alleges the existence of a contract with Suggs to receive the ownership interest in Intel does not support dismissal.

### B. The Claims Based on "Information and Belief"

The defendants argue that, to the extent Katz's claims are not based on contract, the amended complaint should be dismissed because its claims "are predicated solely on allegations of a fraudulent transfer of corporate assets 'on information and belief.'" (Docket Entry No. 25 at 10).

7

The defendants challenge the allegations based "on information and belief" as failing to set forth a sufficient factual basis. *See, e.g., U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("Although we have held that fraud may be pled on information and belief . . . we have also warned that this exception 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.' . . . In addition, even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." (citations omitted)).

Katz agrees that some of his allegations are based on information and belief, and that Rule 9's heightened pleading standards likely apply to his claim for violations of the Texas Uniform Fraudulent Transfer Act. (Docket Entry No. 26 at 8–10). He argues, however, that the complaint pleads sufficient facts to support those allegations. The complaint "sufficiently pleads the who, what, when, where, and how of the fraudulent acts," and pleading on information and belief is necessary because only the defendants know, and have access to the information about, the specifics of the allegedly fraudulent transfers. (*Id.* at 10).

That some of the claims are made on "information and belief" is not a basis for dismissal. Rule 9(b) requires the plaintiff to identify "the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson.*, 125 F.3d at 903 (quoting *Williams*, 112 F.3d at 179). The complaint pleads essential facts making out the Texas Uniform Fraudulent Transfer Act claim. The complaint identifies which conveyances and transfers that allegedly lacked adequate consideration are based on information and belief. (Docket Entry No. 18 at ¶¶ 26, 40). The complaint also states with particularity the facts on which the allegations of inadequate consideration are based. For example, the complaint alleges that Suggs was the managing member and CEO of Intel as well as

8

the co-managing member and CEO of Ntel Pharma. The complaint alleges that Echevarria served as a member and president of Intel, while also serving as the co-managing member and president of Ntel Pharma. The complaint alleges that when Intel's assets were conveyed to Ntel Pharma, Suggs and Echevarria were the majority owners of Intel and held at least a majority ownership interest in Ntel Pharma. The complaint sets out a general timeline for these transactions and alleges with specificity the marketing strategies and official statements of Ntel Pharma and NTel Nutra that tied the transactions to Intel. These allegations are not the type of vague, conclusory pleadings that *Iqbal* and *Twombly* instruct the courts to dismiss.

  C.  **The Aiding and Abetting Claim**

The defendants argue that the court should dismiss the claim for aiding and abetting a breach of fiduciary duty because Texas law does not recognize liability on this basis. (Docket Entry No. 25 at 11). Katz responds that Texas does recognize a claim for aiding and abetting in this context. *See, e.g., Floyd v. Hefner*, 556 F. Supp. 2d 617, 654 (S.D. Tex. 2008) (citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942); *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721 (Tex. App.—Austin 2001, pet. denied)) ("Texas recognizes a cause of action for aiding and abetting a breach of fiduciary duty.").

The cases the defendants cite concluded that Texas law does not recognize a cause of action for aiding and abetting fraud; those cases do not discuss breach of fiduciary duty. *See, e.g., In re Enron Corp. Sec.*, No. H-01-3624, 2006 WL 3716669, at *8 (S.D. Tex. Dec. 12, 2006). As the Texas cases recognize a common-law claim for aiding and abetting a breach of fiduciary duty. *Kinzbach Tool Co.*, 160 S.W.2d at 574 ("It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint

9

tortfeasor with the fiduciary and is liable as such."); *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.); *Kline v. O'Quinn,* 874 S.W.2d 776, 786 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Horton v. Robinson*, 776 S.W.2d 260, 266 (Tex. App.—El Paso 1989, no writ).

Stating a claim for aiding and abetting a breach of fiduciary duty requires pleading: "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007). The amended complaint adequately pleads the existence of a fiduciary duty by alleging that Suggs was the CEO of Intel and by alleging facts about his relationship with, and statements to, Katz about Intel. The complaint alleges that Ntel Pharma and NTel Nutra, through their officers, Suggs and Echevarria, knew of the fiduciary duties that these men owed Intel and participated in the breach. (Docket Entry No. 18 at ¶¶ 68-69). Katz's supporting factual allegations—that Ntel Pharma used the same marketing strategies, website, and mission statement as well as sold the same products as Intel—make these claims more than "threadbare recitals of a cause of action's elements" that merit dismissal. *Iqbal*, 556 U.S. at 678.

### D. The Civil Conspiracy Claim

The defendants also move to dismiss the civil conspiracy claim, arguing that Texas law does not recognize a claim for a civil conspiracy to breach a contract. (Docket Entry No. 25 at 12). Katz argues that his action does not sound in contract but is a derivative action on behalf of Intel. (Docket Entry No. 26 at 11–12).

Because this is a derivative claim and not a breach of contract claim, Katz's cause of action

for civil conspiracy can proceed. Under Texas law, "[a] civil conspiracy involves a combination of two or more persons with an unlawful purpose or a lawful purpose to be accomplished by unlawful means." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001). "That is, a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Katz's amended complaint alleges as the underlying tort the breach of fiduciary duty for his derivative claims. (Docket Entry No. 18 at ¶¶ 89–94). Again, dismissal at this stage is not required.

## IV. Conclusion

The motion to dismiss is denied.

SIGNED on October 1, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge